Thomson, J.,
delivered the 'opinion of the court.
In the month of June, 1882, Williams, having a contract with the city of Denver for the construction of the Twentieth street district sewer, contracted with The Laclede Fire Brick Company for certain material to be used in the building of the sewer. This material, to be delivered by the company to Williams, was described in the contract between them as follows:
“2700 lineal feet 21-in. sewer pipe, more or less; 3430 lineal feet 18-in. sewer pipe, more or less; 9340 lineal feet 15-in. sewer pipe, more or less; 10824 lineal feet 12-in. sewer pipe, more or less ; 33400 lineal feet 9-in. sewer pipe, more or less; 7000 lineal feet 6-in. sewer pipe, more or less; 30 pieces 6-in. X 21-in. Y junctions, more or less; 35 pieces 6-in. X 18-in. Y junctions, more or less; 300 pieces 6-in. X 15-in. Y junctions, more or less; 88 pieces 6-in. X 12-in. Y junctions, more or less; 3300 pieces 6-in. X 9-in. Y junctions, more or less.”
The price of the material was the list price, discounted at the rate of seventy per cent. The contract also contained the following stipulations:
“Said herein named material shall be in accordance with the ’requirements of said second party’s contract with the said city of Denver, as per specifications relating thereto furnished first party herewith, and the second party agrees to and with the first party to receive the material herein mentioned and shipped according- to the terms of the contract on board cars at the works of first party in accordance with the terms of hills of lading taken by the first party in the usual manner and form, and to pay for same as follows: Eighty (80) per cent of the amount of material furnished under this contract included in city engineer’s monthly or other estimate, shall be paid to John W. Horner of Denver, acting as trustee by agreement of the parties hereto, within thirty (30) days after the delivery of the warrant for any such estimate, who shall without delay pay over any such amount to first party, either *313 by sight draft payable to first party’s order in St. Louis, or by a legal warrant of said city of Denver at par value, properly issued and presented to the city treasurer and endorsed by said treasurer, so that any such warrant will bear ten (10) per cent interest per annum from date thereof until paid.
•“ And it is further understood and agreed by and between the several parties hereto and by John W. Horner, acting as trustee for the parties hereto, that in consideration of first party’s agreement to receive the eighty (80) per cent of value in part paj^ment for the material furnished under this contract, as the same may be estimated upon at any time by the city engineer of said city of Denver, that said first party shall have a special lien upon the twenty (20) per cent retained by the said city of Denver out of all estimates under the contract of said second party with the said city of Denver for the construction of the said Twentieth street district sewer, for the purpose of securing said first party in the full payment of any claim that may be due to said first party by said second party under any provision of this contract, and inasmuch as said John W. Horner now holds a power of attorney from said second party authorizing him to collect all moneys or other things that may be due said second party under said contract with said city of Denver as therein fully set out.
“ It is agreed between the respective parties hereto (said John W. Horner assenting) that John W. Horner shall, out of said twenty (20) per cent as and when the same shall come into his hands under his power of attornej'’, pay to said first party in full, any amount in any manner accruing to first party from second party under this contract, it being the intention of this contract that said twenty (20) per cent of all estimates retained by said city of Denver under second party’s contract therewith, or as much thereof as may be necessary therefor, shall upon receipt thereof bj^ said John W. Horner under said power of attorney, be held and deemed to be for the use and benefit of said first party for the purpose of paying in full all claims of said first party against *314 said second party that may arise in any manner under this contract.”
On the day of its execution, Horner indorsed upon the contract his acceptance of the trust, as follows:
“ I hereby accept the aforementioned trust created by the parties in the foregoing contract according to the true tenor and effect of said contract, and will perform the same according to the true tenor and effect thereof construed with the power of attorney given me by Joseph Williams, party of the second part, to collect and disburse the proceeds arising from his.contract with the city of Denver referred to in said contract. John W. Hornee.
“ Denver, Colorado, June — 1882.”
The following is the power of attorney referred to:
“Know all men by these presents, that I, Joseph Williams, of the city of Denver in the county of Arapahoe and state of Colorado, do hereby make, constitute, and appoint John W. Horner, of the city of Denver in the county of Arapahoe, in the state of Colorado, my true, sufficient and lawful attorney, irrevocable, for me and in my name, to receive, receipt for and take from the city of Denver, all warrants or other evidences of indebtedness that may become due me for work done or to be done, materials furnished or to be furnished, or otherwise that may become due me under my contract with the city of Denver, for the construction of the Twentieth street district sewer in the city of Denver aforesaid, and to see to or negotiate and sell said evidences of indebtedness or warrants for the best price that can be obtained therefor at the time and apply the proceeds thereof or see that the proceeds thereof are applied to the payment for. the materials used in the said district sewer or that may be used in said district sewer and the labor that may be employed in the performance of the work necessary to construct the said sewer.
“ The intention of this instrument being the protection of the parties interested in the construction of said district *315 sewer, including the bondsmen of the party of the first part, the city of Denver and the parties furnishing materials and labor for the construction of said district sewer.
“ Hereby giving and granting unto my said attorney full power and authority to do and perform all and every act and thing whatsoever requisite and necessary to be done in and about the premises, as fully to all intents and purposes as I myself might or could do if personally present, with full power of substitution and revocation hereby ratifying and confirming all that my said attorney or his substitute shall lawfully do or cause to be done by virtue hereof.
“ In witness whereof, I have hereunto set my hand and seal this 27th day of April, A. D. 1882.
“ Joseph Williams. [Seal].”
The complaint alleged the delivery to Williams of sewer material of the value of $12,425.61, of which there had been paid the sum of $9,766.03, leaving an unpaid balance of $2,659.58, to recover which this action was brought.
The defendant Horner answered, averring the payment by
him to the plaintiff in full for all material furnished by it under its contract, which was used in the construction of the sewer. Williams also answered payment.
Upon the evidence given at the trial the court made the following findings:
“1. The plaintiff delivered on board the cars at St. Louis and shipped to the defendant, Williams, the following sewer material, charging him therefor in this action the total sum of $11,663.25, and crediting him with payments thereon amounting to $9,766.03 :
“ 2262 feet of 21-inch sewer pipe; 2904 feet of 18-inch sewer pipe; 2764 feet of 15-inch sewer pipe; 6222 feet of 12-inch sewer pipe; 22508 feet of 9-inch sewer pipe; 7150 feet of 6-inch sewer pipe; 36 feet of 21-inch gutter pipe ; 30 pieces of 6X21-inch Y junctions; 96 pieces of 6xl8-ineh Y junctions; 139 pieces of 6X 15-inch Y junctions ; 530 pieces of 6xl2-inch Y junctions; 1570 pieces of 6x9-inch Y june? *316 tions; 25 pieces of 9 X 15-inch Y junctions; 24 pieces of 21X 12-inch D Y junctions; 47 pieces of 18-inch curves; 31 pieces of 15-ineh curves ; 333 pieces of 9-inch curves ; 52 pieces of 9-inch curves, 35 radius.
“ 2. The sewer pipe and Y junctions of all kinds and descriptions actually used in the sewer as shown by the final estimate of the city engineer was the following:
“2806 feet of 21-inch sewer pipe; 2958 feet of 18-inch sewer pipe; 2570 feet of 15-inch sewer pipe; 7320 feet of 12-inch sewer pipe; 26166 feet of 9-inch sewer pipe; 33 pieces of 21X6-inch Y junctions; 57 pieces of 18X6-inch Y junctions; 50 pieces of 15X 6-inch Y junctions; 459 pieces of 12x6-inch Y junctions; 657 pieces of 9x6-inch Y junctions; 9 pieces of 6X6-inch Y junctions.
“ 3. The following sewer materials shipped by the plaintiff to the defendant was not used in the sewer nor estimated for by the city engineer, and none thereof except the 7150 feet of 6-inch pipe was provided for in the plaintiff’s contract with Williams:
“ 7150 feet of 6-inch sewer pipe ; 36 feet of 21-inch gutter pipe; 24 pieces of 21X 12-inch D Y junctions; 47 pieces of 18-inch curves; 31 pieces of 15-inch curves; 333 pieces of 9-inch curves ; 52 pieces of 9-inch curves, 35 radius.
“It is charged up in the plaintiff’s bill at $1,039.33.
“ 4. In constructing the sewer there was placed therein the following sewer material purchased from the Cambria Company and not furnished by the plaintiff:
“ 239 feet of 21-inch sewer pipe; 1006 feet of 18-inch sewer pipe; 140 feet of 15-inch sewer pipe; 1034 feet of 12-inch sewer pipe ; 294 feet of 9-inch sewer pipe ; 14 pieces of 6Xl8-inch Y junctions; 275 pieces of 6x9-inch Y junctions.
“ The value of this material calculated upon the basis of the plaintiff’s contract with Williams was $1,103.05.
“ 5. The plaintiff is entitled to recover from the defendants the sum of $1,039.97 and the interest thereon at the rate of eight per cent per annum. The amount of the recovery is ascertained by calculating the contract price of all the sewer *317 material delivered by the plaintiff on board the cars at St. Louis and shipped to the defendant, Williams, which is described in plaintiff’s contract with Williams, and deducting therefrom the total amount admitted by plaintiff to have been paid upon the entire bill. Nothing is allowed plaintiff for sewer material delivered by plaintiff on board cars at St. Louis and shipped to defendant, Williams, which is not described in the contract between plaintiff and Williams, and Williams is not allowed to reduce plaintiff’s claim in this action by reason'of the fact that he placed in the sewer pipe which he purchased of the Cambria Company.”
The plaintiff had judgment for $1,781.16, from which the defendants appealed.
The findings are accepted by both sides as correct in so far as the facts are concerned, but it is contended by appellants that the court erred in its application of the law to these facts.
It was held by the supreme court, when this cause was before it, that, under the pleadings and evidence, whatever liability might have been incurred in favor of the plaintiff, attached to both defendants. Laclede F. B. M. Co. v. Williams, 14 Colo. 37. Accordingly, the judgment from which this appeal is prosecuted was rendered against the defendants jointly.
Horner was not interested in the sewer contract with the city, and is a party to the contract between the plaintiff and Williams only by virtue of his written acceptance of the trust which it created; and, whatever might be the amount for which Williams became liable upon his contract with the plaintiff, this judgment being against Horner jointly with Williams, must be confined to the amount, if any, for which Horner is in default. The obligations which the latter assumed are defined and limited by this contract of acceptance, and he can be held only t,o the performance of the acts which he expressly agreed to perform. His agreement was to execute the trust in accordance with the tenor and effect of the contract creating it, construed with the power of attorney *318 from Williams. The effect of the qualifying clause is to limit his obligations to the plaintiff to the performance of the aets: which he was authorized to perform by the terms of that, instrument; and, to ascertain what he was bound by his. agreement to do, we must look to the power of attorney.: The authority which it conferred upon him was, in the name of Williams, to receive from the city of Denver all warrants or evidences of indebtedness coming to Williams for work and materials for the construction of the sewer, to sell these warrants and apply their proceeds in payment for the materials which might be used in the sewer, and the labor that might be employed in the performance of the work. To authorize any payment by him for either material or labor, the material must have been used, and the labor employed, in the sewer. The effect of his agreement was that he would' make payments to the plaintiff upon- .its contract with Williams, in accordance with the authority granted in the power of attorney, for materials which, pursuant to its contract, it might furnish for the sewer. To that extent he bound himself to the plaintiff, and no further. The duty of Horner, therefore, under his agreement, was to apply the money realized by him from the city warrants in payment for such of the material furnished by the plaintiff as was used in the sewer. If he did make such application of the money, he has fully performed his agreement; if he did not, then he is liable only for the amount received, which was not so applied.
According to the court’s findings there were certain articles delivered to Williams by the plaintiff which were not embraced in their contract. Of course for those articles there could be no recovery in this action against any person. This is conceded by counsel; but the findings show a considerable quantity of material furnished by the plaintiff in accordance with the terms of its contract, which was not used in the sewer, and a portion of which was replaced by like material purchased from the Cambria Company. It is this furnished and unused material which is the real subject of the present controversy. It is contended by plaintiff’s counsel that the *319 defendants are liable for the whole amount of sewer pipe, specified in the contract, which was delivered to Williams, no matter what use was made of it; that it was not incumbent upon the plaintiff to see that the pipe was actually placed in the sewer ; and that its responsibility ceased when the pipe was delivered to Williams upon his order. As between the plaintiff and Williams, we do not question the soundness of the proposition. We do not see anything in the contract which requires that, in order to fasten a liability upon Williams, the materials should have been actually used in the sewer; but, even if it were otherwise, Williams would hardly be permitted to say that articles embraced in the contract, and ordered by 'him to be used in the sewer, were not so used; and if this suit had been brought against him alone we would be compelled to admit the force of counsel’s argument. But the principle contended for had no application whatever toHorner. He had nothing to do with the ordering of the materials or with the obligations to each other which were assumed by the plaintiff and Williams in their contract. He had no control over the disposition to be made by Williams of the material when delivered. If Williams had refused to receive it at all, and had repudiated his entire contract with the plaintiff, no liability of any kind would have attached to Horner. He simply took upon himself, as trustee, the duty of making certain payments, specified in his power of attorney. Whatever of plaintiff’s material was used in the sewer, he agreed to pay for out of the moneys received by him for city warrants. If none of the material was used, or if he was unable to realize any money for the warrants, he would owe the plaintiff nothing.
The court found the contract value of all the sewer pipe which the plaintiff delivered to Williams, and deducted only the amount of the payments, and the value of such articles as were not included in the contract; and held the defendants chargeable with the entire amount of pipe contracted for, which Williams had received. Judgment was entered accordingly. This was erroneous. The findings show that a *320 considerable quantity of 15-inch pipe, 6 X 18-inch Y junctions, 6 X 15-inch Y junctions, 6 X 12-inch Y junctions, and 6 X 9-inch Y junctions, was not used in the sewer; and none of the 6-inch pipe was so used. No duty rested upon Horner to pay for this unused material, and its price should also have been deducted from the sum total. In this way a correct result could have been reached. But we think a more simple method of adjusting the account between the parties is, instead of finding a gross sum and making deductions, to ascertain the contract value of the particular materials delivered under the contract, which were used in the sewer. For the excess, if any, of such value over the payments made, the plaintiff would be entitled to judgment. If there is‘no excess, the judgment should be for the defendants. By the terms of the contract the sewer pipe was to be delivered to Williams at the rate of seventy per cent discount from the list price. The amount delivered and used is shown by the findings. The list price appears in evidence and is undisputed. The following statement shows the amount of pipe delivered by the plaintiff and used by Williams in the sewer, the list price, the discount, the contract price, and the total value:

This sum of §9,253.05 was all that Horner was bound by *321 his agreement to pay out of the proceeds of the warrants turned over to him. The amount paid was $9,766.03, which is considerably in excess of that sum. The judgment should therefore have been for the defendants, and inasmuch as it was not, it will be reversed with instructions to the court below to proceed in accordance with this opinion.

Reversed.